25CA1298 DeWalt v BRMK 08-13-2026

COLORADO COURT OF APPEALS

---

Court of Appeals No. 25CA1298
Arapahoe County District Court No. 22CV30
Honorable Joseph Whitfield, Judge

---

Rodney DeWalt,

Plaintiff-Appellant and Cross-Appellee,

v.

BRMK Dayton Townhomes, LLC,

Defendant-Appellee and Cross-Appellant.

---

JUDGMENT AFFIRMED AND CASE
REMANDED WITH DIRECTIONS

Division V
Opinion by JUDGE SCHUTZ
Lipinsky and Yun, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced August 13, 2026

---

RVM Law, LLC, Rolf von Merveldt, Denver, Colorado, for Plaintiff-Appellant and
Cross-Appellee

Markus Williams LLC, Peter Q. Murphy, Denver, Colorado, for Defendant-
Appellee and Cross-Appellant

¶ 1    Plaintiff, Rodney DeWalt, appeals the district court's order granting summary judgment in favor of defendant, BRMK Dayton Townhomes, LLC (BRMK).  We affirm and remand with instructions.

## I.    Background

¶ 2    Broadmark[1] Realty Capital, through one of its subsidiaries — BRELF II, LLC (BRELF) — financed the townhome complex (the complex) where Dewalt's townhouse (the unit) was located.  1301 South Dayton Townhomes, LLC (South Dayton) was the developer of the complex.  In July 2020, DeWalt signed a residential lease agreement (the lease) for the unit with South Dayton.  The agreement identified Renters Warehouse as the unit's property manager.

---

[1] Although the record and the parties' briefing are unclear, it appears that DeWalt's arguments are, in part, based on the idea that BRMK and South Dayton were both subsidiaries of an entity he calls "Broadmark."  There are several entities that include "Broadmark" in their full legal names.  We are therefore uncertain whether the references to "Broadmark" in DeWalt's briefs mean Broadmark Realty Capital; Broadmark Real Estate Management II, LLC; BRELF II, LLC; or another entity with a similar name.  DeWalt does not define the term, and neither the district court nor BRMK mentioned the term.  Furthermore, DeWalt at no point asserts that any of these entities are alter egos of the entity he refers to as "Broadmark."  In the remainder of this opinion, we refer to the specific legal entities that the parties actually identify.

1

¶ 3     On January 21, 2021, Broadmark Realty Capital incorporated BRMK.  The next day, DeWalt sent Renters Warehouse a written complaint about the unit's electrical system.  On February 3, 2021, DeWalt filed a small claims case against Renters Warehouse in Denver County Court.  Later that month, Renters Warehouse sent an employee to inspect the unit.  The inspection revealed several lease violations, including that an unauthorized tenant was living in the unfinished basement and that DeWalt had misused the electrical system by setting up a kitchenette in the basement.

¶ 4     Around this time, South Dayton defaulted on its loan from BRMK Lending, LLC (BRELF's successor by merger), the complex — including the unit — went into foreclosure, and BRMK obtained title to it through a confirmation deed dated February 26, 2021.

¶ 5     In March 2021, the county court dismissed DeWalt's small claims case, without prejudice, for improper service, and Renters Warehouse gave two notices to DeWalt for the lease violations.  In late March 2021, Renters Warehouse hired an electrician to inspect the unit's electrical system.

¶ 6     In early April 2021, Renters Warehouse began eviction proceedings against DeWalt on the grounds that he had failed to

cure the lease violations or vacate the unit. After DeWalt failed to vacate, Renters Warehouse filed a forcible entry and detainer (FED) proceeding against him in the Arapahoe County Court. DeWalt filed a counterclaim, and the case was transferred to the Arapahoe County District Court.

¶ 7    The district court awarded possession of the unit to Renters Warehouse but gave DeWalt seven days to amend his pleadings to provide a factual and legal basis for his counterclaims. The district court eventually dismissed DeWalt's counterclaims with prejudice after he failed to respond to an order to show cause regarding his failure to appear at a discovery hearing, failed to submit initial disclosures, and failed to participate in submitting a case management order. DeWalt appealed to a division of this court, which affirmed. *See Renters Warehouse v. DeWalt*, (Colo. App. No. 22CA0063, Nov. 3, 2022) (not published pursuant to C.A.R. 35(e)).

¶ 8    During the pendency of that appeal, DeWalt filed this action against BRMK, South Dayton, and Randal Craven.[2] DeWalt's

---

[2] DeWalt does not identify Craven in his complaint. In addition, the record contains no documentation reflecting service of the complaint on either South Dayton or Craven. Neither of them appeared in the district court and neither is a party to this appeal.

claims in this case are substantially similar to those that he asserted in his prior suit against Renters Warehouse: (1) breach of contract; (2) negligence; (3) intentional infliction of emotional distress (IIED); (4) fraud and negligent misrepresentation; and (5) theft by deception.

¶ 9     In his first claim, DeWalt alleged that BRMK breached an unspecified contract with DeWalt by not providing a rental unit that complied with the warranty of habitability.  In his negligence claim, he alleged that BRMK owed him a "duty to exercise reasonable care adhering to safety codes, performing maintenance related to the [unit, and] follow[ing] all health and building codes," and that BRMK's negligence had caused him to incur "damages and losses." The third claim alleged that BRMK acted recklessly and that its acts were intended to inflict severe emotional and mental distress on DeWalt and his family.  DeWalt's fraud and misrepresentation claim alleged that the electrical system in the unit was faulty and that BRMK knew and purposefully concealed the electrical system's condition from DeWalt.  Finally, DeWalt's theft by deception claim alleged that a Renters Warehouse contractor or employee sent to inspect the unit stole DeWalt's personal property.

4

¶ 10    BRMK filed a motion for summary judgment on grounds of claim preclusion, which the district court granted. DeWalt appealed that order to another division of this court, which reversed the district court and remanded the case for further proceedings. *See DeWalt v. BRMK Dayton Townhomes, LLC*, (Colo. App. No. 23CA1912, Sep. 26, 2024) (not published pursuant to C.A.R. 35(e)).

¶ 11    Once back in the district court, BRMK filed an amended motion for summary judgment on all DeWalt's claims. The parties briefed the matter, and in a thorough written order, the district court again granted summary judgment in favor of BRMK.

¶ 12    DeWalt now appeals the district court's grant of summary judgment. BRMK cross-appeals the district court's failure to award it costs and attorney fees.

## II.    Discussion

¶ 13    We begin by addressing DeWalt's contentions regarding the district court's grant of summary judgment against him.

### A.    Standard of Review

¶ 14    We review an order entering summary judgment de novo. *Nat. Energy Res. Co. v. Upper Gunnison River Water Conservancy Dist.*, 142 P.3d 1265, 1276 (Colo. 2006). Like the district court, we view

5

all facts in the light most favorable to the nonmoving party. *Id.* Summary judgment is only appropriate when there are no disputed issues of material fact, and the moving party is entitled to judgment as a matter of law. *See Thomas v. Childhelp, Inc.*, 2024 COA 16, ¶ 13.

### B. Breach of Contract Claim

¶ 15 DeWalt contends that the entry of summary judgment in favor of BRMK on his breach of contract claim was predicated on factual findings not supported by the record. Specifically, DeWalt argues that, at the time South Dayton obtained the loan from BRELF, South Dayton executed a deed of trust that contained an assignment of the townhome leases and rents to BRELF. By virtue of this assignment, and the subsequent transactions through which BRMK acquired title to the complex, DeWalt's argument continues, BRMK became a party to lease and was bound by its terms. Thus, DeWalt claims, the district court erred by finding that there was no contractual relationship between BRMK and DeWalt. BRMK, by contrast, argues that DeWalt's lease was with South Dayton, not BRMK, and it was extinguished as a matter of law through the foreclosure on the superior deed of trust. We agree with BRMK.

6

¶ 16　　To recover on a breach of contract claim, the moving party must establish "(1) the existence of a contract; (2) performance by the plaintiff or some justification for nonperformance; (3) failure to perform the contract by the defendant; and (4) resulting damages to the plaintiff." *Adams Cnty. Hous. Auth. v. Panzlau*, 2022 COA 148, ¶ 55 (quoting *Marquardt v. Perry*, 200 P.3d 1126, 1129 (Colo. App. 2008)).  Therefore, our first task is to determine whether a contract existed between DeWalt and BRMK.

¶ 17　　"[W]hen a deed of trust is foreclosed, the issuance of a certificate of purchase voids all junior liens, unless a redemption occurs, and the title received is free and clear of all unredeemed junior encumbrances." *Ferguson Enters., Inc. v. Keybuild Sols., Inc.*, 275 P.3d 741, 748 (Colo. App. 2011) (citations omitted).  Existing leasehold interests in the foreclosed property are among the junior encumbrances that are extinguished through an unredeemed foreclosure.  *See First Interstate Bank v. Tanktech, Inc.*, 864 P.2d 116, 119 (Colo. 1993) ("[U]pon foreclosure of a senior security interest, any subordinate leases, liens or encumbrances are extinguished once the redemption period has expired . . . .").

¶ 18    As noted above, DeWalt argues that the lease was "assigned" to BRMK when it was executed.  The deed of trust for the property identified BRELF as the beneficiary.  The deed of trust included the following language regarding leases:

> 1. <u>Granting Clause.</u>  As security for the Secured Obligation, [South Dayton] hereby grants, bargains, sells and conveys to [the Public Trustee of Arapahoe County] in trust, with power of sale and with right of entry and possession as provided herein for the use and benefit of [BRELF], all [South Dayton's] estate, right, title, interest, claim, and demand, now owned or hereafter acquired, in and to the following ("the Property"):
>
> . . . .
>
> f. All rents, issues and profits of the Real Property, all existing and future leases of the Real Property (including renewals, amendments, modifications, replacements, extension and subleases) . . . , together with the immediate and continuing right to collect and receive all of the rents, income, receipts, revenues, issues, profits and other income . . . under the Leases.

DeWalt argues that, because the rents and leases were "assigned to [BRELF] as security for the loan," the leases were not "subordinate" to the deed of trust.  The subordination clause provided, in relevant part, that the lease was superseded by the assignment of rent

8

language in the deed of trust ("This Lease and Tenant's interest hereunder are and shall be subordinate, junior, and inferior to any and all mortgages, liens, or encumbrances now or hereafter placed on the Premises by Landlord . . . ."). These arguments are misguided.

¶ 19     The supreme court's analysis in *Tanktech* is controlling. In that case, Tanktech had a three-year lease with D & E Investment Company (D & E). *Tanktech,* 864 P.2d at 118. First Interstate Bank obtained a deed of trust encumbering the subject property. *Id.* D & E filed for bankruptcy and the bank foreclosed, eventually obtaining title to the property. *Id.* Although the bank did not enter into a new lease agreement with Tanktech, it permitted Tanktech to remain at the leased premises so long as it continued paying the same monthly rent it had made under its lease with D & E. *Id.* Subsequently, a dispute arose between the bank and Tanktech over property damage caused by a ruptured water pipe.

¶ 20     The supreme court held that the foreclosure extinguished the lease, but that Tanktech's continued payment of rent, and the bank's *acceptance* of those payments, created a month-to-month tenancy, not a holdover tenancy. *Id.* at 122 ("Accordingly, we find

that upon the foreclosure of a mortgage or deed of trust all subordinate leases are extinguished and that the landlord/tenant holdover doctrine cannot be used to give effect to the terms of an extinguished lease.").

¶ 21     Neither party argues that DeWalt stopped making rental payments at any point.  DeWalt does not explicitly argue that he had a holdover tenancy but argues that BRMK "assumed the lease obligations previously held by [South Dayton]" and that DeWalt became BRMK's tenant when BRMK obtained title to the property. DeWalt points to Renters Warehouse's continued acceptance of his rent money after the foreclosure sale as support for his argument that BRMK assumed the lease.

¶ 22     It is true that the continued acceptance of rent payments by a landlord after a lease has expired may — in other circumstances — be sufficient to establish a holdover tenancy.  *Id.* at 120.  However, this is not the case when, as here, a foreclosure and sale of the property extinguished the lease.  *Id.* at 123.

¶ 23     To the extent that DeWalt's argument could be construed as a claim that he had a month-to-month tenancy with BRMK, the claim fails.  Recall that BRMK did not acquire title to the complex until

February 26, 2021. Renters Warehouse sent its eviction notices to DeWalt two weeks later and filed its FED case against him in early April. Under these circumstances, the district court did not err by finding there was no tenancy, and hence no contractual relationship, between BRMK and DeWalt. At most, DeWalt had a month-to-month tenancy that terminated when the district court's order in the FED case became effective.

¶ 24    Accordingly, we perceive no error in the district court's determination that "DeWalt did not have an agreement with BRMK sufficient to support a breach of contract claim."

## C.    Negligence Claim

¶ 25    DeWalt next argues that the district court erred by granting summary judgment in favor of BRMK on his negligence claim. "To prevail on a negligence claim, the plaintiff must prove (1) the existence of a legal duty of the defendant to the plaintiff; (2) breach of that duty; (3) injury and damages to the plaintiff; and (4) a sufficient causal connection between the defendant's breach and the plaintiff's damages." *Leaf v. Beihoffer*, 2014 COA 117, ¶ 12. The existence of a duty is a threshold question because if no duty is owed, "the question of whether the other elements can be satisfied

does not arise."  *N.M. v. Trujillo*, 2017 CO 79, ¶ 24.  We determine

de novo whether a legal duty exists.  *See Blakesley v. BNSF Ry. Co.*,

2019 COA 119, ¶ 12 ("Whether a defendant owes a duty to a

particular plaintiff and the scope of any duty owed are questions of

law that we review de novo.").

¶ 26    DeWalt argues that BRMK was his landlord and owed him

duties "under common law, Colorado's F.E.D. statutes, warranty of

habitability, and premises liability statutes."  We are not persuaded.

### 1.    Warranty of Habitability

¶ 27    On appeal, DeWalt's primary argument is that the district

court erred by determining that BRMK owed no duty to him under

the statutory warranty of habitability because no lease existed

between BRMK and DeWalt.  *See* § 38-12-503(1)-(2), C.R.S. 2025.

As established above, the district court correctly determined there

was no lease relationship.

¶ 28    DeWalt argues that the district court erred by stating that,

"[t]o the extend DeWalt seeks to hold BRMK liable under the rental

agreement he signed with Renter's Warehouse, that effort must

fail."  DeWalt points out that his lease was with South Dayton, not

12

with Renters Warehouse, and therefore the district court's findings are "plain error."

¶ 29     DeWalt is correct that he signed the lease with South Dayton, not Renters Warehouse, which managed the property. The lease specifically states that Renters Warehouse was not the landlord. The district court's reference to DeWalt entering into the lease with Renters Warehouse appears to have been a typographical error — one name transposed for another. Elsewhere in its nineteen-page order, the district court correctly identifies that DeWalt entered into a lease with South Dayton and that Renters Warehouse managed the property. We see no other instances of this transposition. But whether it was an inadvertent or logical error, we will not reverse "unless the error resulted in substantial prejudice to a party." *State Farm Mut. Auto. Ins. Co. v. Goddard*, 2021 COA 15, ¶ 56; *see also* C.R.C.P. 61 ("[A]t every stage of the proceeding [the court] must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.").

¶ 30     For the reason previously articulated, there was no lease between BRMK and DeWalt. That alone is sufficient to defeat his warranty of habitability claims. *See* § 38-12-503(1) ("In every rental

agreement, the landlord is deemed to warrant that the residential premises is fit for human habitation . . . .").  Moreover, the district court noted that even if there was a "rental agreement" between DeWalt and BRMK — and it had already determined there was no such agreement — DeWalt still could not recover under the warranty of habitability statute because he was required to give notice of the condition and did not do so.  *See* § 38-12-503(2)(b) ("A landlord breaches the warranty of habitability . . . if . . . [t]he landlord has notice . . . of the condition . . . .").

¶ 31    We perceive no reversible error in the district court's determination that BRMK did not owe DeWalt a duty under the warranty of habitability statute.  Any error that the district court made by transposing Renters Warehouse's name into part of its analysis was harmless.

2.    Premises Liability Act and Common Law

¶ 32    DeWalt next argues that the district court erred by determining that BRMK did not owe him a duty under the Premises Liability Act (PLA) or common law principles.  He specifically asserts that the court improperly considered only the pleadings when ruling on summary judgment, rather than evaluating all the evidence

14

submitted by the parties. Moreover, DeWalt argues that his pleadings alleged sufficient injury and damages under the PLA.

¶ 33 DeWalt does not elaborate on the first aspect of this argument. He fails to identify any specific documents or evidence material to his PLA and common law claims that the district court overlooked or erroneously reviewed. Moreover, the court's summary judgment order expressly states that it had reviewed "the filings, exhibits, case file, and procedural history" of the case. Thus, the court did consider the materials submitted with the motion. DeWalt also fails to explain how his allegation that he suffered $50,000 in damages for "stolen property and harassment" are connected in any way to his PLA and common law claims.

¶ 34 DeWalt appears to argue that his damages under the PLA stem from a theft allegedly committed during an inspection by a contract electrician or employee sent by Renters Warehouse. The PLA imposes different duties on landowners, depending on whether the injured party is a licensee, invitee, or trespasser. *See* § 13-21-115(4)(a)-(c), C.R.S. 2025. But DeWalt fails to allege whether he was a licensee, invitee, or trespasser at the time of the alleged theft, and he fails to explain how BRMK violated any of the potential

15

standards of care that he believes apply. Courts cannot make arguments for parties. *See Dep't of Nat. Res. v. 5 Star Feedlot, Inc.*, 2021 CO 27, ¶ 39 n.15 (plurality opinion) ("[C]ourts 'should not be making arguments for a party.' Attorneys, not judicial officers, should lawyer cases." (citation omitted)). Given this record, we perceive no error in the district court's determination that DeWalt had not alleged an injury under the PLA.

¶ 35 DeWalt next argues that BRMK owed him a duty under "common law." He cites *Nordin v. Madden*, 148 P.3d 218, 220 (Colo. App. 2006), but like the district court, we are unable to discern its relevance here. In *Nordin*, the question was whether the landlord was a "landowner" under the PLA. *Id.* at 219. DeWalt references *Nordin*'s discussion of the covenant to repair and a landlord's right of entry, *id.* at 120, but does not explain how these concepts apply to his claim against BRMK.

¶ 36 The district court found that BRMK did not obtain control of the unit for the purpose of making repairs. Recall, it was Renters Warehouse — not BRMK — that sent an employee or contractor to inspect the electrical system. The alleged electrical issues predated

16

BRMK's interest in the complex and BRMK was not notified of these issues or the inspections until the FED proceeding commenced.

¶ 37    Thus, we perceive no error in the district court's determination that BRMK did not owe DeWalt any duties under either the PLA or common law principles.

### 3.    FED

¶ 38    DeWalt's opening brief makes a conclusory assertion that the district court erred by determining that BRMK did not owe a duty to DeWalt under, among other theories, "Colorado's F.E.D. statutes." DeWalt does not develop this argument in either his opening or reply brief. We do not consider undeveloped arguments. *Woodbridge Condo. Ass'n v. Lo Viento Blanco, LLC*, 2020 COA 34, ¶ 41 n.12, *aff'd*, 2021 CO 56. Therefore, we do not address the matter further.

### D.    IIED Claim

¶ 39    DeWalt next argues that the district court erred by finding that BRMK had not engaged in any extreme or outrageous conduct toward DeWalt. He asserts that "reasonable persons could differ as to the outrageousness of the issue" and therefore the district court "was required to submit the issue to a jury as a matter of law." In

17

response, BRMK argues that DeWalt incorrectly conflates BRMK with the prior owner of the complex and Renters Warehouse.

¶ 40　　As previously established, BRMK was never DeWalt's landlord and was not involved in the construction or maintenance of the unit.　Indeed, BRMK did not come into existence until after the unit's construction and played no role in constructing or maintaining the unit's electrical system.　Thus, BRMK argues DeWalt's IIED claim fails as a matter of fact and law.

¶ 41　　A claim for IIED requires a plaintiff to establish (1) that the defendant engaged in extreme and outrageous conduct; (2) that the defendant acted either recklessly or with the intent of causing severe emotional distress; and (3) that the conduct actually caused the plaintiff to suffer severe emotional distress. *Mackall v. JPMorgan Chase Bank, N.A.*, 2014 COA 120, ¶ 49.

¶ 42　　Many of the events that DeWalt points to — such as allegations of wrongful eviction and unspecified medical issues affecting him and his family — occurred before BRMK acquired the property or were the product of BRMK exercising its legal rights as the owner of the property.　"[A]n actor will not be liable for emotional distress caused by merely insisting upon his or her legal

rights in a permissible manner." *Bigby v. Big 3 Supply Co.*, 937 P.2d 794, 800 (Colo. App. 1996) (citing Restatement (Second) of Torts § 46 cmt. g (A.L.I. 1965)). DeWalt points to his eviction as a basis for IIED, but BRMK merely acquiesced in the eviction that Renters Warehouse initiated on South Dayton's behalf. In doing so, BRMK was simply exercising its legal rights. We therefore perceive no error in the district court's determination that BRMK could not have committed any extreme or outrageous conduct against DeWalt.

¶ 43    Lastly, we briefly address DeWalt's argument that his IIED claim should have been submitted to a jury. Although he makes this assertion on appeal, the record does not reflect that he raised any disputed issues of material fact relevant to this claim in the district court. And in civil proceedings we do not consider issues raised for the first time on appeal absent extraordinary circumstances not present here. *City of Westminster v. Centric-Jones Constructors*, 100 P.3d 472, 482 (Colo. 2003). We therefore do not address the contention further.

## E. Fraudulent Misrepresentation Claim

¶ 44    DeWalt argues that the district court erred by concluding that he could not prevail on his fraudulent misrepresentation claim against BRMK because he did not communicate directly with BRMK about the property.

> To establish a claim for fraudulent misrepresentation, a plaintiff must prove that (1) the defendant made a fraudulent misrepresentation of material fact; (2) the plaintiff relied on the misrepresentation; (3) the plaintiff had a right to rely on or was justified in relying on the misrepresentation; and (4) the plaintiff's reliance resulted in damages.

*Barnes v. State Farm Mut. Auto. Ins. Co.*, 2021 COA 89, ¶ 28.

¶ 45    DeWalt's fraud claim rests on two primary contentions: first, that Renters Warehouse acted as BRMK's agent in leasing the unit to DeWalt and, in that capacity, Renters Warehouse misrepresented or failed to disclose material facts concerning the unit's electrical system, and second, that Renters Warehouse "lied" regarding the ten-day notice issued in connection with the eviction. We discern no error in the district court's conclusion that these claims fail as a matter of law.

20

¶ 46    "Actions for misrepresentations and fraud generally fit into the category of torts which do not lie within the scope and principles of respondeat superior." *Grease Monkey Int'l, Inc. v. Montoya*, 904 P.2d 468, 473 (Colo. 1995) (citing Restatement (Second) of Agency § 92 (A.L.I. 1958)).  Thus, "[a] principal is not bound by the false representations of his agent made without his knowledge, consent, or authority." *Id.* at 475 (quoting *Erisman v. McCarty*, 236 P. 777, 781 (Colo. 1925)).  DeWalt's electrical system allegations are premised on his repeated contention that, even though BRMK did not exist until January 2021, Renters Warehouse acted as BRMK's agent by virtue of the deed of trust provision containing the assignment of rents and leases to BRELF.  We have already rejected this argument: The assignment of rents and leases did not impose any obligations on BRMK.

¶ 47    Regarding the second aspect of DeWalt's fraud claim — his allegation that Renters Warehouse made false statements during the eviction proceedings — neither his complaint nor his appellate briefs explains what specific false representations were made. Likewise, he fails to cite any legal authority explaining how any of

21

Renters Warehouse's purportedly false statements during the eviction proceedings could be actionable against BRMK.

¶ 48    The district court correctly concluded that DeWalt's fraud-based claims failed as a matter of fact and law.

### F.    Civil Theft Claim

¶ 49    Lastly, DeWalt argues that the district court erred by concluding that BRMK had not committed theft by deception. We perceive no error.

¶ 50    "To prove a claim of civil theft, a plaintiff must establish that a defendant (1) knowingly obtained, retained, or exercised control over anything of value of another without authorization; and (2) intentionally or knowingly deprived the other person permanently of the use or benefit of the property." *Million v. Grasse*, 2024 COA 22, ¶ 44; *see* § 18-4-401(1), C.R.S. 2025. "An employer may be held vicariously liable for an employee's tort only when the tort is committed within the course and scope of employment." *Moses v. Diocese of Colo.*, 863 P.2d 310, 329-30 (Colo. 1993). As a corollary principle, "if an employee commits an intentional tort solely for reasons that do not further his employer's business or cannot be considered a natural incident of employment, the employer cannot

22

be vicariously liable." *Id.* at 329 n.27 (citing *Cooley v. Eskridge*, 241 P.2d 851, 857 (Colo 1952)).

¶ 51    DeWalt seems to argue that Renters Warehouse acted as BRMK's agent when it hired an electrical contractor to inspect the unit, and that either the electrician or a Renters Warehouse employee stole his "expensive watch collection."

¶ 52    There are no rational arguments to suggest that such a theft — if proved — could be deemed within the scope of the workers' employment with Renters Warehouse, much less that of BRMK. Moreover, BRMK provided uncontroverted evidence that it had no contact with DeWalt or the electrician until well after the alleged theft occurred. DeWalt cited no legal authority — either in the district court or on appeal — explaining how BRMK could be held responsible for the alleged theft. Because DeWalt failed to identify any facts suggesting that the electrician or employee could have been acting as BRMK's agent, or that the alleged theft occurred within the scope of the actor's employment, the district court did not err by granting summary judgment against DeWalt on this claim.

## G. BRMK's Attorney Fees Claim

¶ 53    We now turn to BRMK's cross-appeal against DeWalt. BRMK argues that the district court failed to rule on its request for attorney fees and costs, asserting that DeWalt's suit was frivolous and groundless. BRMK seeks an award of attorney fees and costs, to be imposed jointly and severally on DeWalt and his attorney.

¶ 54    BRMK requested attorney fees and costs against DeWalt in its amended motion for summary judgment. But on appeal, BRMK states that it sought fees and costs against both DeWalt and his counsel.

¶ 55    The district court did not rule on BRMK's request for fees and costs against DeWalt in its summary judgment order. We generally do not address issues that were raised but not ruled upon by the district court. *JW Constr. Co. v. Elliott,* 253 P.3d 1265, 1271 (Colo. App. 2011). Therefore, we remand this matter to the district court to address BRMK's outstanding request for an award of attorney fees and costs against DeWalt.

## III. Disposition

¶ 56    We affirm the district court's judgment and remand for further proceedings consistent with this opinion.

24

JUDGE LIPINSKY and JUDGE YUN concur.